Today is 19-104-01, United States v. Moreno. Mr. Nunn? May it please the Court, good morning. My name is Randall Nunn. I'm the counsel representing appellant in this case, Anthony Moreno, who is appealing his 300-month sentence for conspiracy to possess with intent to distribute methamphetamine. My argument will focus on the first three issues in my brief, and I'll rely on the brief for issues 4 and 5, unless the Court has questions on those. Mr. Moreno was sentenced based on an offense level of 41, a criminal history category of 1. He had one criminal history point, giving him a range of 324 to 405 months. His guideline sentencing range, he was sentenced on April 1, 2019, to 300 months. The first issue in the brief has to do with whether the possession, the enhancement for possession of a weapon in connection with drug trafficking activity as applied to Mr. Moreno violating the Second Amendment. The guideline, 2D1.1b1, says that if a weapon was possessed during a drug offense, drug conspiracy, or any kind of activity like that, that he should be enhanced two levels, two offense levels, which is a fairly significant enhancement for someone with this kind of a guideline sentencing range. The commentary to that guideline says that the enhancement should be applied if the weapon was present, unless it's clearly improbable that it was connected with the offense. The case law, I think, in the Fifth Circuit says that you have to have a connection between the weapon, the defendant, and the drug activity. What we contend here is that there was not a connection, in this case, between Mr. Moreno and the firearm and the drug activity. He possessed weapons in his home and he possessed weapons in his vehicle. In the state of Texas, he is allowed to possess a weapon in his vehicle. He's allowed to possess weapons in his home under the Second Amendment. But you argue the Second Amendment guideline distinction. You would agree that if the to carry a gun in connection with a drug offense. So, if you lose on the enhancement, there's no Second Amendment issue, or do you disagree? I'm not sure that I can agree with that. I think in this case, in effect, a presumption in the guideline comes into conflict with the Second Amendment. The government has to show it's temporally and spatially connected. There were four guns in the was found, is that correct? Yes. Okay. So, that sounds like a temporal and spatial connection under our case law. What I thought you were arguing was somehow it was clearly improbable that those were connected because of the type of guns they were? No. Well, there were three rifles. Both action rifles were also found, I think, in the bedroom. It may have been in the living room next to it. I'm not sure where they were found. I don't think those really had anything to do with the drug transaction. I've never seen a bold action. So, your argument is, one, that it's clearly improbable. Even though they were there at the same time, in the same space, the argument is it was clearly improbable they were connected to the drugs because of the nature of the guns. Is that the primary argument? Yes, sir. That is essentially the argument. I think the question is, this is an individual who had the right... I'm sorry to interrupt, but just to pick up on what Judge Higgins said, were the guns operable that were found? I understand they're bolt-action rifles, but do they work? The bolt-action rifles had no ammunition with them. There's nothing that I recall that said  Well, that's not my question. Are they operable? I don't think they were, but the... Well, does the record reflect that they were operable? The bolt-action rifles? Yes. It does not, but the record does reflect that there was no ammunition for any of the bolt-action When were those rifles manufactured? What kind of rifles were they? These were World War II bolt-action rifles. Two British Enfields and an Italian Cardone bolt-action. I think he was just interested in firearms in general. I assume from discussions with him that that interest was why he had those. They played no part, I don't think, in the case other than that. I think the issue, though, here's a person who had no prior felony convictions, a person who had the right to possess firearms in his home and in his vehicle in Texas. He had both of those rights. So given the fact that he had both of those rights, I think it's certainly possible that you could say these were in his bedroom and there were some drugs in the bedroom. The question is whether they were personal use or not, I think. That's a debatable issue there. So he has two rights. He has a right to possess firearms under the Constitution, under the Heller case, McDonald case. So he also, then you say, well, but wait a minute. If these weapons are in the presence of drugs, doesn't that mean that it's probable that that's what they were for? And what we're arguing is that that is a presumption from the sentencing guideline. The commentary to the sentencing guideline is the device that makes presence the important element in many of these drug cases. I think the guideline is in conflict with the, not the guideline rather, but the commentary is in conflict with the guideline in the sense that it ties this presence in and makes this a different offense when you look at the two together. But if he admitted that he possessed it, then that would necessarily show the guns were present. He's not disputing he possessed all these guns. No, we're not disputing that he possessed them. What we're disputing is that he possessed them in connection with the drug offense. He possessed them, we're saying, in connection with the right to defend his home and hearth, and that's why he possessed them. So then the question becomes, well, how do we separate the two out when this thing, the commentary, not the guideline, the commentary says if it's present, then you should apply the enhancement. And what we're saying is the Second Amendment is... But my point is the commentary and presence, even if there were any friction, which I don't think the law supports, he or he said he possessed them. So the issue is he's pleading guilty as a meth conspirator possessing guns. There's no case law that says the Second Amendment guarantees drug dealers the right to carry guns. Right, right. So the government, your client has pled guilty to being a meth distributor, conspirator, and then they arrest him possessing multiple guns in the same room. What's your best case that says that they can't enhance him based on those guns? What case says there's a Second Amendment exception to enhancement for a drug dealer that possesses and admits he's possessing guns? Well, I think the Heller case primarily from the U.S. Supreme Court says... When the statistics show, and quite often it's cited in our opinions, that you've got drug trafficking, you've got weapons. It's the common methodology to have a weapon. So that's like saying y'all won't let me buy a .50 caliber machine gun because I have a Second Amendment right. I mean, there are countless limitations or restrictions on Second Amendment gun or weapon ownership. I mean, it goes so far back it's lost in the clouds. Yes, sir, I think that's correct. But I think Heller shows the importance and significance of the Second Amendment to our country and to the traditions and so forth. And I think what you have here is you have a right, under the Bill of Rights, the U.S. Constitution, that says this man has committed no felony offenses. This man has the right to possess firearms in his home. This man has the right to have one in his vehicle. And then you say, but wait a minute. He had some drugs in his house. He had some drugs apparently in his vehicle. So doesn't that mean that he possessed those for the purpose of the drug offense? And what we're saying is no, because he still, that whole time, had the right under the Second Amendment. And so you have two different rights. Which one should take precedence in a case like that? Can you take a commentary statement, which two circuit courts have said that's, in effect, a presumption. Can you take a presumption in the commentary to sentencing guidelines that were not enacted by Congress, not enacted by a legislature, and have that overrule his Second Amendment rights? And what we're saying is no, you can't unless the government shows that there was a connection. And in this case, there was never a time when anyone saw him in possession of a firearm, when he ever carried a firearm that anyone knows. He never admitted that. No one heard anything said. I'm going to interrupt you. I think we have the Second Amendment argument. The argument that looked most, the enhancement that looked most difficult to me was the enhancement for the premises using storing drugs at the home. So I have a specific factual question. It seemed to me that the PSR stated that they found 78 grams of ice at the house and that you didn't object to that. Is it correct that ice, in addition to cocaine and marijuana, was found at the house? Yes, I think it's correct. There's an issue. In several places in the PSR, the presentence report, there are statements about what was found or not found in the house. They are different somewhat, and so it's difficult to know which are correct when you look at that. One place, they say that there was eight-tenths of one gram of methamphetamine gross weight found in the house. In another place, it talks about ice. I think what happened was the police officers came, they searched the house after Mr. Moreno was arrested, and they found certain things and they weighed them at the house. I didn't see any evidence that they later confirmed weights and confirmed what the percentage was. Was it ice or was it just methamphetamine? A lot of people, I find, in the drug business will refer to methamphetamine as ice, even though it may not really be ice, it may be a lesser purity. If it's not methamphetamine, what is it? I'm sorry? If it's not methamphetamine, what is it when someone's referring to ice? Well, it would be methamphetamine, but ice, I'm saying, is over 80% purity, and whether it was or not, I did not see in the discovery lab report that said specifically that. And what I'm saying is many times when the police do a search, someone will say, what do you have? And you say ice. And that is oftentimes, I've found, is a shorthand for just saying methamphetamine. Were you just appointed to handle this appeal? Did you represent him when he pleaded guilty to distribution of methamphetamine? Right. You represented him? Yes. And so you were at the sentencing hearing? Yes. But you didn't put on proof to show that it wasn't methamphetamine in his house, even though he had pleaded guilty to it? No, because we weren't disputing the fact that methamphetamine was found. Well, did you dispute the drug quantity? 77.7 grams? Yes. Yeah, we disputed that because— What evidence did you put on? Well, I didn't feel that we needed to at that point because the PSR itself said that the drug quantity was based primarily, very substantially, on telephone conversations that were recorded between Mr. Moreno and the dealer who supplied him, the number one defendant in the case. And so they took the telephone recordings, which did not have any weights, and they said, well, based on this, we figured out how many dollars he went and delivered money to the number one guy. And so they figured out how many dollars made how much weight. The reason I was asking was you do have a separate issue on appeal, disputing that the drugs they find when they search the house were drugs that were being used to manufacture and distribute, that a primary purpose of the house was to facilitate the distribution and manufacturing. Right. And that's a difficult enhancement because here they go in and they find it, but your argument is that was for personal use. Right. However, if meth was found there as well, and he admits in the PSR that he was receiving meth from Mexico, busting it down, and then redistributing it, it seems to me it's a fair inference that the district court could make that he was storing it at home in order to then redistribute it.  And if that's right, then that issue isn't probably going to prevail. Well, we dispute that it was stored for the purposes of drug distribution. There was absolutely no evidence that he ever distributed anything from that house. The amounts of drugs that were found there were, relatively speaking, quite small. There were three different things that were found there. Marijuana. Mr. Moreno was a user of marijuana, a daily user, I think, in most cases. That's mostly what was found there. Marijuana was not in the case. Nobody was charged with marijuana. There was a small amount of cocaine. Cocaine was not in the case. So it was primarily heroin and meth. So what we're saying is, no, that was not the primary use of the house. It was a residence. He lived there with his son, his stepfather, and his girlfriend. There was no one that ever came to the house. If it was a storage place, one would think that customers would be coming. But you agree that the law doesn't require it to be the primary. It is a primary. So it could both be home and a place to store, to distribute. Right. And they do find the item that he pleads guilty to distributing meth. They find it there. What's the case that says the district court can't infer from that storage to distribute? What's your best case that would overturn the two-point enhancement on those cases? I think there's a case. I don't have the case. It's in my brief. I think the case is that it has to be stored for the purposes of distribution. Again, one of the interesting things in this one is storage was not in the guideline itself. Storage came in through the commentary. And then they said storage in connection with distribution. There was no distribution. I think even the government will admit there was nothing showing anything was ever distributed out of that house. When they got the other items, there was interestingly almost no packaging. Well, I don't think there was any packaging material. They said there were a few sandwich baggie-sized things with drugs in them. That looks more like personal use quantities than anything else. You didn't find boxes of baggies to break it down. What did the facts show about his distribution of meth? Where was he distributing the meth? From his car? He apparently did much of the distribution driving his vehicle around and distributing small quantities. He said most of his customers were ounce or less type customers. Was he distributing from his car in small baggies? So far as we know. That's unclear from the case and the documents in the case, but that's what I would assume. There was what they call a stash house. The man who supplied him with drugs, I'm inferring that he probably used that stash house for some of these kinds of activities because there was no evidence that his house ever had any customers coming to his house. There was no evidence that there was any substantial amounts. There weren't packaging materials. There weren't large quantities of drugs. You would think of it as storage for the purpose of distribution, and these were large amounts of distribution. It looked like that there would be something like that there. There was not. So we're saying it's not even a primary purpose. Thank you. You have time to move on. Thank you. Ms. Williams? Will Limmons? Williams. Williams. Were you the prosecutor that handled the guilty plea? No, I was not. I put it up on appeal. Was there a guilty plea and a factual basis, or did he plea straight up? There was a guilty plea and a factual resume. The factual resume doesn't describe the guns in the house? It doesn't purport to? No, it does not. So that was left for sentencing and preponderance? Correct. Yes. So may it please the court, Christina Williams for the United States. Moreno fails to show that the district court erred in applying the sentencing enhancements for two reasons. First, the record shows that the district court did not clearly err in deciding factual issues and that the evidence supported the enhancements. Second, to the extent Moreno raises legal and constitutional challenges, those are easily resolved by case law and the plain language of the guidelines in favor of the enhancements. So this court should affirm the judgment. And I'll start with the premises enhancement, which seems to be most interesting to this court. And first, it's clear that there was a significant quantity of drugs found at the house. There's three ounces of methamphetamine, which is certainly not user quantity. Moreover, as to relevant conduct, which counts for purposes of a premises enhancement, there's 3.5 pounds of marijuana. That is not in any sense of the word user quantity. And then there's also baggies of cocaine. And these drugs are not found in one large box together. They're found, the methamphetamine is found in two small baggies, the marijuana is found in vacuum-sealed bags and a small baggie, and the cocaine is found in small baggies. The difficulty with this enhancement is it can be stretched so far that, as in this case, one search into a house, which everyone admits is his home, if it were to just then find personal use amounts, that clearly isn't storing to distribute. So it depends on if you have no evidence of frequency, they haven't monitored and seen him taking stuff out of the house, you just have targeted a drug dealer and you do choose to arrest him in the house, then you find drugs there. The enhancement doesn't automatically apply, correct? That's correct. It's not an automatic application. So what's the bright line? How do we distinguish so that we aren't turning every single drug arrest into a stash house case? Well, here, first of all, there was far more than user quantity found in the house. And second, we also have this guilty plea. But not far more of the charged drug, correct? That's true, but this court has held that other drugs found for purposes of relevant conduct also count for the enhancement. So we have to take the total mass of drugs that's found in the house, along with the six weapons, which this court has found, that are clear markers of the drug trafficking and use to protect goods. So we take those together, along with, you know, there's much made about the fact there's no paraphernalia. Well, baggies themselves are paraphernalia. This was not one amount. There were several that were packaged ready to go for him to take in his car to distribute to somebody. We also know that he is an admitted and pled guilty to a drug conspiracy to distribute. And he admits to picking up kilogram quantities multiple times a month, busting those down, and then distributing those over a period of several days via his car. And then you have with that the fact that at the search there is distribution-level quantity found. And, you know, those together indicate that it was not improbable and implausible for the district court to conclude that that was not the only occasion that he stored drugs for distribution. Didn't he also admit that he received deliveries by someone Hispanic from Mexico? Yes, he did. Which type of drug? Of the methamphetamine. And how often? He indicated that he received multiple kilogram quantities two to three times a month, and the record shows that even at one point he picked up 14 kilograms. So this was an ongoing thing in large amounts, and he says that he has ounce customers. So he's admitting that he's not buying those kilograms from the stash house, getting in his car and immediately delivering that to somebody else. He's busting it down somewhere, turning it into these ounce quantities. And given what was found in the house when the search was conducted, it was certainly probable and not implausible that that was not the only occasion that he stored those drugs in his house. The actual guideline is distribution and manufacture. Then the commentary says it can be storage, and the case law says it can be storage because you store to distribute. Yes, that's correct. But that's already one level down. Usually there's evidence of sort of frequency of use of the house. There are in many cases. However, this court has affirmed in United States v. Lopez an unpublished decision in 2017 where there was only one known instance for certain of storage, where the search was done and there were drugs found there along with guns and a scale. And the court said there that while it may be a close factual question, it was not clear error for the district court to apply the enhancement. Do you know if we've ever reversed this enhancement? I do not believe this court has. And in 2018 in United States v. Rodriguez, this court actually noted that it had never overturned the premise of this enhancement. So anytime guns and drugs are found, how much is this a two-point enhancement? It's a two-point enhancement, yes. However, the government's not advocating that it's an automatic, but instead the government is advocating that the district court here did not clearly err in applying the enhancement because there was enough evidence to support the district court's finding and to not leave this court feeling that it was clear and convincing and a definite conviction that an error had been committed. So next, turning to the dangerous weapon enhancement, unless the court has any more questions on the premises. First of all, there were six guns found in the house. The idea that the three rifles somehow can't be counted as dangerous weapons is simply not supported by the record. They were found behind a couch. The defendant never put forth any evidence that those were inoperable or that they were stored or somehow specifically delineated only for purposes of collection. But even if there was that evidence, this court has in previous cases affirmed the enhancement first where the guns aren't loaded or where there's not ammunition sitting next to it or even when the gun is in a locked box. So that simply doesn't pass muster to remove them from the calculation. And again, as I said, there were not simply user quantities that were found in the house. These were distribution quantities. And this court's case law makes clear that where a significant quantity of drugs, as there was here, is found with dangerous weapons, what the defendant admits to the fact that the drugs and the guns are his, they were found in the same room, and they're clearly connected with the offense because there's at least distribution quantity of methamphetamine that the enhancement applies. And as to any Second Amendment argument, at least five circuits have held that the enhancement passes muster under the Second Amendment, and there is no case to the contrary. So I think that's clearly settled. I don't want to interrupt, but I always do. So the meth and the PSR, is it undisputed that 78 grams were actually seized, discovered in the house? So if you look at the DEA investigation reports on page 224 to 225, you see the itemized list of exactly what was found. And it said that they believed it to be methamphetamine. It was not laboratory tested. I see. But that is not argued on appeal to the extent that... And the PSR picks it up and says, attributes 78. He didn't object to that paragraph? He objected to the total drug quantity in the district court. But not the paragraph that said 78 grams of meth found at the house? Yes, that's correct. That was included in the drug quantity, and he makes no challenges to drug quantity, purity, or anything similar on appeal. So we take that as it is, and it's amply supported by the DEA investigation notes. As to the importation enhancement, the government will rely on its 28-day letter, citing Kirby that that's foreclosed in this circuit. So if the court has no further questions, the government would ask the court to affirm on all of the enhancements, and I'll return the balance of my time to the court. Thank you, Ms. Mullen. Thank you. Counsel? I think the important thing here is the conflict between the Second Amendment and the enhancements. This was a case where Mr. Moreno was enhanced for three different things, two levels for each one, which added six levels to his offense level, total offense level, which almost doubled his sentence with just these three enhancements. Two of them are very much wrapped up with the Second Amendment issue, the storage argument, because, again, there was no showing at all that he distributed anything from his home. There's no showing that there was any storage of anything other than personal use quantities. So I think the question is, does he continue to possess his Second Amendment rights, even if he's dealing drugs? And I think the answer to that is yes. If he commits no unlawful acts with a firearm, in connection with a drug activity, he still has a right under Heller to defend his home, his family, using firearms if he is not a felon, if he has no other disabilities from possessing and owning a firearm, and he doesn't, and he didn't at that time. So then the question is, well, okay, he possesses a Second Amendment right, but he's a drug dealer. Shouldn't this override that and say he doesn't have the right to defend his family, doesn't have the right to defend himself? And I think the answer to that is no, he does have that right because Heller and other cases say you still have that right if you weren't otherwise barred from possessing them, and he was not. So then the question becomes, I think, if the government has the initial burden to come in and show that these were used in connection with a drug activity, that was never done. There was never anything that showed that he ever carried a gun in any of the drug transactions. There are people in the drug industry who are smart enough not to carry, have a firearm in connection with drug activities. He was never reported in any of the reports, any of the DEA reports, having a gun. One of the first things they do in proper interviews. We had the argument and the red light came on. We appreciate it. Thank you. Thank you.